

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

CHRISTOPHER WISE,

    Plaintiff,

vs.

(1) AAA INSURANCE COMPANY, Inc.,
    A Foreign Corporation,
(2) HAGERTY INSURANCE AGENCY, LLC,
    A Foreign Corporation,

    Defendants.



CJ-2015-02620

LINDA G. MORRISSEY

DISTRICT COURT
**FILED**
JUL 14 2015
SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

## PETITION

**COMES NOW,** the Plaintiff, by and through his attorney of record, Thomas Mortensen, and for his causes of action against the Defendants, alleges and states as follows, to wit:

1. That at all times hereinafter mentioned, the Plaintiff, was and is a resident of Tulsa County, State of Oklahoma.

2. Defendant AAA Insurance Company, Inc., ("Defendant AAA") is a foreign corporation doing business in Oklahoma. Defendant is organized as a business that issues insurance policies, and has substantial ties to Tulsa County, Oklahoma, because it has conducted business, and continues to do business, in Tulsa County and the State of Oklahoma.

3. Defendant Hagerty Insurance Agency, LLC, ("Defendant Hagerty") is a foreign corporation doing business in Oklahoma. Defendant is organized as a business that issues insurance policies, and has substantial ties to Tulsa County, Oklahoma, because it has conducted business, and continues to do business, in Tulsa County and the State of Oklahoma.

1

EXHIBIT 2 - Page 1

4. The acts and omissions that are the subject of this dispute occurred in Tulsa County, Oklahoma, thus, this Court has jurisdiction of the parties hereto and the subject matter hereof.

## FACTUAL BACKGROUND

5. On February 18, 2013, Plaintiff contracted with Defendant AAA for vehicle insurance for a six (6) month term under policy number OKS-002841670. This policy included medical payments ("med-pay") coverage up to $10,000 for each person, and Uninsured/Underinsured (collectively referred to as "UM") motorist coverage up to $50,000 per person and $100,000 per accident.

6. On March 19, 2012, Plaintiff contracted with Defendant Hagerty for vehicle insurance for a twelve (12) month term, to begin on April 18, 2012, under policy number 5N18551. This policy included medical payments coverage up to $5,000 for each person, and UM motorist coverage up to $50,000 per person and $100,000 per accident.

7. Plaintiff purchased a motorcycle on Saturday March 17, 2013. On the day of the purchase, Plaintiff contacted his AAA insurance agent to include the motorcycle on his existing coverage, however, Plaintiff was unable to reach anybody over the phone.

8. Later that same day, Plaintiff was involved in an accident when he was driving his motorcycle on Peoria avenue in the City of Tulsa. The accident occurred after another vehicle failed to stop at a stop, entered Plaintiff's lane of traffic which forced Plaintiff to maneuver his motorcycle to avoid the collision, however, Plaintiff lost control of the motorcycle and fell to the ground severely injuring himself.

9. As a result of the accident, Plaintiff was transported to the hospital via ambulance and was admitted to the hospital for several days due to the extensive injuries.

10. During the course of his treatment, Plaintiff incurred approximately $16,000 in medical expenses.

11. Since the tortfeasor was 100% at fault for the accident, the tortfeasor's insurance company tendered it's policy limits of $25,000 shortly after negotiations began.

12. At the time of the collision, the Plaintiff had neither been offered UM insurance or declined to accept UM insurance for his new motorcycle purchase.

## FACTUAL ALLEGATIONS – DEFENDANT AAA

13. On July 16, 2013, Plaintiff gave notice to Defendant AAA of the accident and that Plaintiff had retained counsel to represent him.

14. On or around July 18, 2013, Juffrey Luton, a casualty specialist with Defendant AAA, submitted a letter to plaintiff's counsel wherein he indicated that there may be a claims coverage question due to "(t)he vehicle was not listed on the policy at the time of the loss." The letter also included a form to be filled out and signed by the Plaintiff regarding potential Medicare secondary payment information.

15. On July 29, 2013, Plaintiff submitted a certified letter to Defendant AAA which included the Plaintiff's medical records and bills, along with a signed copy of the Medicare request. Also included was the accident report, a signed W-9 form, and an update of the settlement negotiations with the tort-feasor. In that letter, Plaintiff requested the Defendant AAA commence its evaluation of Plaintiff's claim to UM benefits under the policy.

16. On September 18, 2013, Plaintiff's counsel advised Defendant AAA that Plaintiff's other vehicle was insured through Hagerty Insurance company since it was a classic car.

Also, Plaintiff's counsel advised Defendant AAA that Plaintiff was bringing the insurance declarations page if Defendant AAA still needed the information.

17. On September 24, 2013, Plaintiff communicated with Defendant AAA and provided a copy of Defendant Hagerty's insurance declarations page.

18. In response, Defendant AAA indicated in an email that it needs more information and requested Plaintiff conduct an investigation and seek out and provide Defendant AAA with a copy of Defendant Hagerty's policy, consider the following:

> "Looking good so far, but now I need just a little more information to establish coverage. I need a copy of the policy that goes with the Hagerty declaration page, and I need to know if a claim has been filed with Hagerty as well. There's light at the end of the tunnel! Thanks!"

19. That same day, Plaintiff's counsel advised Defendant AAA that the Hagerty policy was just discovered, and that a claim had not yet been filed.

20. In response, Defendant AAA advised Plaintiff's counsel that:

> "I took the dec page for review and was advised that we need the actual policy language. ***But seriously, the potential for coverage looks much better now.*** Thanks!"

21. On October 3, 2013, Plaintiff's counsel provided Defendant AAA with Hagerty's insurance policy for its review.

22. On October 29, 2013, Plaintiff's counsel submitted an email to Defendant AAA regarding the Plaintiff's med-pay policy, specifically; that Jeffrey Luton advised Plaintiff that med-pay wasn't available under the applicable policy since Defendant AAA doesn't insure motorcycles. Also, Plaintiff advised Defendant AAA that a request for a UM and med-pay evaluation was being sent to Defendant Hagerty.

4

EXHIBIT 2 - Page 4

23. On November 20, 2013, Plaintiff submitted a follow-up letter to Defendant AAA regarding the lack of any response to the July 29th request to evaluate the case, and a request to explain a phone conversation wherein Jeffrey Luton stated that the Plaintiff was not eligible for med-pay under the policy because Defendant AAA doesn't insure motorcycles, an excerpt is attached below:

> Dear Mr. Luton,
>
> On July 29, 2013, I submitted a packet of medical records and bills to your attention requesting that you evaluate my client's UM claim according to his policy. It has now been one-hundred fourteen (114) days since our request and we have still not been advised of what your evaluation revealed.
>
> Also, you indicated in your July 18, 2013, letter that my client has $10,000 in med-pay coverage, however, you advised my assistant that his med-pay coverage does not apply to him because AAA doesn't insure motorcycles? If this statement is incorrect or taken out of context, please let me know at your earliest convenience so we could discuss in further detail.
>
> If you haven't already commenced your evaluation, please do so at this time. If you have any questions, or need any other documentation from this office, please feel free to call anytime.

24. On or about November 21, 2013, Defendant AAA submitted a copy of the insurance policy that was in effect at the time of the March accident. There was not, however, any indication that Defendant AAA had evaluated the Plaintiff's claim for benefits under the policy. Additionally, there was no explanation for the denial of med-pay because Defendant AAA doesn't insure motorcycles.

25. On December 10, 2013, Plaintiff submitted yet another request for status on Plaintiff's claims for benefits under Defendant AAA's insurance policy.

26. In response to the December 10th inquiry, Jeffrey Luton stated:

> "I am just waiting on you to advise me if (Defendant Hagerty), has concluded their claim and coverage investigation. As we discussed before, ***we need the result of their coverage investigation to determine if we will have coverage.*** I would be happy to contact them myself if you will provide the claim info."

27. Although Defendant AAA was asking for the claim info for Defendant Hagerty's policy, Plaintiff had already provided the insurance declarations page approximately three (3) months earlier on September 24, 2013.

28. On the same day, Plaintiffs counsel submitted an email questioning the need to wait on Defendant Hagerty to make a coverage determination. Also, Plaintiff reminded Defendant AAA that it had *"been 133 days since we have requested your evaluation regarding your insured's injuries."*

29. In the same email, Plaintiff's counsel again inquired into Defendant AAA's position that it will not provide med-pay coverage "because your company does not insure motorcycles."

30. On December 13, 2013, Plaintiff submitted yet another request for status on Plaintiff's claims for benefits under Defendant AAA's insurance policy.

31. On December 16, 2015, a phone conference was had involving Jeffrey Luton and plaintiff's counsel, and a December 18, 2013, email memorialized the conversation, which is included as provided below:

> "Mr. Luton,
> This email will serve to memorialize our conversation on Monday, December 16th. You informed me that the insurance policy specifically excluded any UM and med-pay coverage because my client was on a motorcycle at the time the tort-feasor entered his lane and forced him to lose control of his motorcycle. In fact, you not only advised me that there was no coverage due to him being on a motorcycle, you provided me with two (2) Oklahoma cases that allegedly supports your position. Well, after finally receiving your position on this matter after six (6) months, and after reviewing the cases...I disagree.
> One thing that is odd about this case, is that I have yet to receive any correspondence from your office for your stated position, specifically; that the policy in place for my client specifically excludes UM and/or med-pay coverage for my clients injuries due to him being on a motorcycle. Accordingly, I am now demanding that you provide my office with a letter from your company where you assert that position.

Thank you for your cooperation in this matter and please contact me immediately if my recollection of our conversation is different that what you heard, or if there is anything you need from this office to complete an evaluation."

32. Defendant AAA did not respond to this request until over one-hundred (100) days after Plaintiff sent a demand to Defendant AAA to provide it's evaluation and/or denial in a written correspondence.

33. On March 27, 2014, Defendant AAA finally submitted a letter wherein it gave its reasons for the denial of benefits under its policy.

34. Defendant AAA gave five (5) reasons why the Plaintiff would not be covered under its applicable UM and/or med-pay policy for his injuries which were never offered before, specifically;

   1) That UM benefits would not apply to a vehicle that "is not listed as a vehicle on the policy";

   2) That UM benefits would not apply because "the motorcycle could not be added to the policy as AAA does not write coverage for motorcycles";

   3) That UM benefits would not apply because the Plaintiff's motorcycle would not be considered a "new vehicle" because the policy requires that Defendant AAA insure "all" of Plaintiff's vehicles. Since Plaintiff owned a second vehicle insured under a different carrier's policy, Defendant AAA would not provide coverage under its applicable UM policy;

   4) That UM benefits would not apply because the policy provisions define "vehicle" as a "motor vehicle having 4 or 6 wheels and 2 axles", which would exclude any accident while occupying a 2 wheeled motorcycle; and,

   5) That UM benefits would not apply under Title 36 O.S. § 3636(E) because the Plaintiff owned the vehicle, but had not yet insured the vehicle under it's policy.

35. Defendant AAA took approximately 254 days, or 8½ months, to provide it's denial letter, despite the continued and persistent attempts by plaintiff's counsel to receive a written response.

36. During this lengthy delay, Plaintiff provided Defendant AAA with a copy of Defendant Hagerty's insurance policy and declarations page. However, Defendant AAA still requested that Plaintiff conduct Defendant AAA's investigation into potential coverage under Defendant Hagerty's policy. In fact, Defendant AAA specifically stated that it was waiting on Plaintiff to advise it whether Defendant Hagerty had concluded it's investigation.

37. Also, Defendant AAA stated that coverage under its policy depended on the result of Defendant Hagerty's claim and coverage investigation (12/10/13 email: "As we discussed before, *we need the result of their coverage investigation to determine if we will have coverage.*").

## FACTUAL ALLEGATIONS – DEFENDANT HAGERTY

38. On November 8, 203, Plaintiff gave notice to Defendant Hagerty of his accident, along with a copy of the medical records and bills. Plaintiff requested Defendant Hagerty conduct it's evaluation of the matter for potential coverage, and also requested payments of medical expenses under the med-pay provisions of the policy. It is undisputed that Defendant Hagerty's policy was in full force and effect at the time of the accident.

39. On November 12, 2013, Plaintiff's counsel emailed another copy of the letter and the requested information to Defendant Hagerty's adjuster, Deborah Taylor. Also, Plaintiff's counsel advised Defendant Hagerty that there was another insurance policy

through Defendant AAA, and submitted a copy of Defendant AAA's insurance declarations page along with the email.

40. On November 20, 2013, Plaintiff's counsel inquired about the status of Defendant Hagerty's evaluation. In response, senior claims representative Bill Richardson with Defendant Hagerty sent an email indicating that he had received the medical records and bills of Plaintiff, and would contact the Plaintiff once he completed his coverage evaluation.

41. On November 26, 2013, Plaintiff's counsel again inquired about the status of Defendant Hagerty's evaluation, however, there was no response.

42. On April 7, 2014, which was approximately 133 days since the last request for a status update, Defendant Hagerty submitted a denial letter indicating that it believed Plaintiff was not using a "covered auto" at the time of the collision, and that Plaintiff was operating a "newly purchased motorcycle."

43. It is undisputed, however, that Defendant Hagerty did not offer – and Plaintiff had not rejected – a policy for UM coverage with Defendant Hagerty at the time of the collision.

44. Interestingly, Defendant Hagerty submitted its denial letter at approximately the same time as Defendant AAA. More interesting, Defendant Hagerty gave the same reason for the denial as Defendant AAA.

## FIRST CAUSE OF ACTION
### *Breach of Contract*

45. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

46. Plaintiff contracted for, and was the listed insured on both Defendant's automobile insurance policies.

47. Plaintiff has requested that both Defendants tender payment under said policies for the UM and med-pay benefits contracted for in said policies, however, both Defendants have refused to tender said payments in connection with said policies. The Plaintiff has performed all conditions precedent under the policy.

48. Both Defendants have breached its contract of insurance and has wholly refused or neglected to pay Plaintiff the value of the contract. Said failures constitute a breach of contract of said insurance policies, and Plaintiff is entitled to a judgment against both Defendants for the proceeds of the insurance policy, along with any consequential damages associated with the refusal to pay.

## SECOND CAUSE OF ACTION
### *Bad Faith*

49. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

50. Plaintiff contracted for, and was the listed insured on both Defendant's automobile insurance policies.

51. As previously mentioned, both Defendants have refused and/or neglected to pay Plaintiff the value of the contracts.

52. In its handling of Plaintiff's claim for benefits under the insurance policy, both Defendants breached their respective duties to deal fairly and in good faith towards Plaintiff in the following respects:

   a) Failing to pay Plaintiff the insurance benefits that he was entitled to under the policy at the time when Defendants knew the Plaintiff was entitled to those benefits;

   b) Withholding payment of benefits to the Plaintiff knowing that Plaintiff's claim for those benefits was valid;

c) Refusing to honor Plaintiff's claim without a legitimate, arguable reason and lacking any evidence or reasonable support for its refusal;

d) Refusing to pay Plaintiff's claim for reasons contrary to the express provisions of the law;

e) Intentionally and recklessly misapplying the applicable provisions of the insurance policy;

f) Using its unequal wealth and bargaining position to overwhelm and take advantage of the Plaintiff and to effect an economic gain for the Defendant by not paying the insurance policy proceeds that it owed by virtue of the insurance contract;

g) Failing to properly investigate the Plaintiff's claim for benefits;

h) Failing to properly evaluate the investigation that was done on Plaintiff's claim for benefits;

i) Requiring an insured to pursue a claim with another insurance company before offering settlement, where settlement is required;

j) Requiring an insured to exhaust the policy limits of another insurance company prior to offering settlement in a UM claim;

k) Delaying a denial which caused financial and emotional distress;

l) Deception in dealing with insured and his counsel;

m) Imposing the burden of investigation onto the lawyer for it's insured and/or making burdensome documentation demands which are not required by the facts or the policy;

n) Intentional interference with recovery of that portion of the loss which is uninsured;

o) Creating issues and/or designing a scheme to not pay insured's rightful benefits;

p) Using factual and/or legal basis not sued for the basis for the denial or for the delay;

q) Failing to adopt and implement reasonable standards for the prompt investigation and handling of claims arising under the policies including the claims of the Plaintiff; and,

    r)    Failing to attempt to act in good faith to effectuate a prompt, fair settlement for the Plaintiff's claim.

53. As a direct result of both Defendants breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered the loss of insurance policy benefits, has suffered mental and emotional distress, anxiety, embarrassment, and financial hardship associated with the loss of income and failure to pay insurance proceeds.

54. Both Defendants has acted intentionally, maliciously and in reckless disregard for the rights of Plaintiff. As a result, the Plaintiff is entitled to recover punitive damages against both Defendants for these actions.

**WHEREFORE,** for the reasons set forth herein, Plaintiff prays that he have and recover judgment against both Defendants on his claims, to include actual damages in excess of Ten Thousand Dollars ($10,000.00), with interest accruing, and punitive damages in excess of Ten Thousand Dollars ($10,000.00), reasonable attorney fees, the costs taxable by law, and all other relief deemed appropriate by this Court.

Respectfully submitted,

MORTENSEN & ASSOCIATES, LLC

_____
Thomas Mortensen, OBA # 19183
1331 S. Denver Ave.
Tulsa, Oklahoma 74119
(918) 392-9992 – Telephone
(918) 392-9993 – Facsimile
*Attorney for Plaintiff Christopher Wise*

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**